STATE of Wisconsin,
Plaintiff-Respondent,

v.

T. P. TRUCKING,
Defendant-Appellant.†

Court of Appeals

*No. 2005AP2496. Submitted on briefs March 31, 2006.
—Decided April 25, 2006.*

2006 WI App 98

(Also reported in 715 N.W.2d 736.)

† Petition to review denied 8-31-06.

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Michael R. Inglimo* of Superior.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Rebecca J. Lovejoy*, assistant district attorney.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1. HOOVER, P.J.[1] T. P. Trucking appeals a judgment of conviction for violating Class A highway weight limits. It contends it was carrying peeled or unpeeled forest products cut crosswise and therefore was exempt from weight limits under the frozen roads provision of Wis. Stat. § 348.175. We affirm the judgment.

¶ 2. Wisconsin Stat. § 348.175 states in part:

> The transportation of peeled or unpeeled forest products cut crosswise or of abrasives or salt for highway winter maintenance in excess of gross weight limitations under s. 348.15 shall be permitted during the winter months when the highways are so frozen that no damage may result thereto by reason of such transportation . . . .

The phrase "peeled or unpeeled forest products cut crosswise" is not defined in the statutes. T. P. argues that the woodchips it was carrying constituted peeled or unpeeled forest products cut crosswise. Relying on a physical examination of the woodchips, it argues they contain bark, which indicates that they were unpeeled, and that they are cut across the grain, which indicates they were cut crosswise. The State argues, and the

---

[1] Originally assigned as a one-judge appeal, this case was reassigned to a three-judge panel on April 19, 2006. *See* Wis. Stat. Rule 809.41. All references to the Wisconsin Statutes are to the 2003–04 version unless otherwise noted.

circuit court concluded, that woodchips do not fit within this definition, which instead applies to products comparable to logs.

¶ 3. The only question before us is whether woodchips constitute peeled or unpeeled forest products cut crosswise. This is a question of statutory interpretation, which we review independently. *Kimberly S.S. v. Sebastian X.L.*, 2005 WI App 83, ¶ 3, 281 Wis. 2d 261, 697 N.W.2d 476. Statutory interpretation begins with the language of the statute. *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. Words are given their common, ordinary, and accepted meaning, except that technical or specially defined words are given their technical or specially defined meaning. *Id.* Statutory language is also read in context, not in isolation. *Id.*, ¶ 46. If this analysis reveals a plain meaning, the analysis stops. *Id.* If not, we can consider extrinsic sources such as legislative history. *Id.*, ¶¶ 46–52.

¶ 4. As noted above, the phrase peeled or unpeeled forest products cut crosswise is not defined in the statutes. The descriptive nature of its terms suggests the phrase is meant to be self-defining. We agree with the circuit court that the plain meaning of this phrase does not encompass woodchips. The phrase instead invokes images of logs, posts, poles, or similar pieces of timber, with or without bark, and cut to length.[2]

---

[2] While not dispositive, we note that the term "peeled or unpeeled forest products" is used within the definition of "logs" in Wis. Admin. Code § Trans 307.02(8) (1996). That definition states: " 'Log' means a section of the trunk or branches of a

¶ 5. We reject T. P.'s attempts to hyperanalyze the meaning of "cut crosswise" with reference to its woodchips. First, the two sample woodchips put into evidence before the circuit court cannot reasonably be viewed as cut crosswise. At most, they are peeled or unpeeled forest products cut crosswise and then fed into a woodchipper, which cut them in multiple directions. In other words, they are mere byproducts of what the statute contemplates. Carried to its logical conclusion, T. P.'s reasoning would include sawdust in the definition of peeled or unpeeled forest products cut crosswise.

¶ 6. Further, even if T. P. were able to demonstrate that its woodchips were produced from a piece of timber fed lengthwise into a woodchipper that only cut crosswise, adopting its interpretation would create a factual question regarding how woodchips were produced every time an overweight load of woodchips claimed exemption from weight limits under WIS. STAT. § 348.175. Such an idiosyncratic application of the statute to woodchips would render nonsensical the meaning of peeled or unpeeled forest products cut crosswise.

¶ 7. We also note that the context within which the phrase is used elsewhere in the statutes suggests that woodchips are not encompassed by its terms. Under WIS. STAT. § 348.19(1)(b), trucks carrying peeled or unpeeled forest products cut crosswise are exempt from having to travel more than one mile from a point of apprehension for weighing if their estimated weight, as calculated by a specific formula, does not exceed weight limits. The formula prescribes that the average height of a load is multiplied by its average length and

felled tree. The term includes, but is not limited to, similar peeled or unpeeled forest products such as pilings, posts, poles, cordwood, pulpwood, and fuel wood."

then multiplied by a fixed weight specified in an accompanying table.[3] WIS. STAT. § 348.19(1)(b). For example, softwood, unpeeled and "green," is calculated using 300 pounds per square foot.[4] *Id.* While it is true the calculation could be applied to a load of woodchips, it makes much more sense in the context of logs, posts, poles, or comparable products. Specifically, the references to a load's "average height" and "average length" suggest such products, insofar as they may be of varying lengths and circumferences and not susceptible to even stacking. By contrast, a load of woodchips would presumably, as here, be transported in an enclosed container, where the length of the load would be equivalent to the length of the container.

¶ 8. Moreover, the table in WIS. STAT. § 348.19(1)(b) presumes that the type of tree being transported will be readily discernable. Discerning the types of trees from which woodchips were produced seems impractical for the summary weight estimation contemplated by the statute. Just determining whether all the woodchips were produced from the same type of tree would be extremely tedious. We are convinced that woodchips are not peeled or unpeeled forest products cut crosswise.

*By the Court.*—Judgment affirmed.

---

[3] This weight is then added to the unloaded weight of the vehicle. WIS. STAT. § 348.19(1)(b).

[4] While 300 pounds per square foot may seem high at first glance, that weight is only multiplied by square feet, calculated using height and length, not cubic feet, which would multiply the above square-footage number by the load's width.